HYSTER CO., a.k.a., NACCO Materials Handling Group Inc., Independent Lift Truck Builders Union, International Assoc. of Machinists and Aerospace Workers, International Union, Allied Industrial Workers of America (AFL–CIO), and United Shop and Service Employees, Plaintiffs,

v.

UNITED STATES, Defendant,

and

Nissan Motor Co., Ltd., et al., Toyota Motor Sales, U.S.A., Inc., and Toyo Umpanki Co., Ltd., Defendant–Intervenors.

Court No. 92–03–00133.
Slip Op. 94–101.

United States Court of International Trade.

June 23, 1994.

Collier, Shannon, Rill & Scott, Paul C. Rosenthal, Mary T. Staley and David C. Smith, Jr., Washington, DC, for plaintiffs.

Frank W. Hunger, Asst. Atty. Gen., David Cohen, Director, Civil Div., Commercial Litigation Branch, U.S. Department of Justice, Jeffrey M. Telep, Priya Alagiri, Attorney–Advisor, Office of the Deputy Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, DC, of counsel, for defendant.

Arnold & Porter, Lawrence A. Schneider and Susan T. Morita, Washington, DC, for defendant-intervenors Nissan Motor Co. et al.

Dorsey & Whitney, John B. Rehm, Munford Page Hall, II and L. Daniel Mullaney, Washington, DC, for defendant-intervenor Toyota Motor Sales, U.S.A., Inc.

O'Melveny & Myers, Greyson Bryan, Craig L. McKee and Bruce Hirsh, Los Angeles, CA, for defendant-intervenor Toyo Umpanki Co., Ltd.

## OPINION

CARMAN, Judge:

Plaintiffs contest certain aspects of the U.S. Department of Commerce's (Commerce) *Final Results of Redetermination Pursuant to Court Remand* (April 11, 1994) (*Remand Results*). Plaintiffs request the Court to remand the action to Commerce. The Court retained jurisdiction over this matter during the pendency of Commerce's remand investigation.

## BACKGROUND

Plaintiffs NACCO Materials Handling Group, Inc.,[1] Independent Lift Truck Builders Union, International Association of Machinists and Aerospace Workers, International Union, Allied Industrial Workers of America (AFL–CIO), and United Shop and Service Employees (collectively "NACCO") are a U.S. manufacturer of internal-combustion, industrial forklift trucks and domestic unions representing workers who are engaged in the manufacture of internal-combustion, industri-

---

1. During the course of this litigation, plaintiff changed its name from Hyster Co. to NACCO Materials Handling Group, Inc.

al forklift trucks in the U.S. The three defendant-intervenors, Nissan,[2] Toyota, and Toyo, are manufacturers/exporters of the internal-combustion, industrial forklift trucks from Japan under review.

In the original action, plaintiffs contested Commerce's final results in *Certain Internal–Combustion, Industrial Forklift Trucks from Japan*, 57 Fed.Reg. 3167 (Dep't Comm. 1992) (*Final Results*). The Court held in *Hyster* that Commerce properly (1) determined it is not required to conduct a test of consumer tax incidence; (2) determined the Japanese consumption tax was included in the price of defendant-intervenors' forklift trucks; (3) selected a model match methodology; (4) determined Toyo's purchases from suppliers were at arm's length; (4) accepted Nissan's accounting methodology pertaining to Nissan's U.S. value-added costs; (5) treated Toyota's fringe benefits; (6) determined verification of Nissan's and Toyo's cost of production was unnecessary; (7) treated Nissan's home market rebates; and (8) accounted for Toyota's value-added labor costs and product liability premiums. *Hyster Co. v. United States*, 18 CIT ——, ——, 848 F.Supp. 178, 192 (1994).

Additionally, the Court remanded the case to Commerce and ordered the agency to eliminate the use of 19 U.S.C. § 1677b(a)(4)(B) (1988) in accounting for the "multiplier effect," and to consider any further adjustments to USP consistent with *Zenith Elecs. Corp. v. United States*, 11 Fed. Cir. (T) ——, 988 F.2d 1573 (1993) and title 19 which the agency deemed appropriate. *Hyster*, 18 CIT at ——, 848 F.Supp. at 192. The Court also ordered Commerce to point to substantial evidence on the record in support of its determination that Nissan and Toyota's related-party transfer prices were arm's length, and if it is unable to point to such evidence, to make any necessary adjustments. *Id.* at ——, 848 F.Supp. at 192. Finally, the Court directed Commerce to correct the errors in Toyo's database. *Id.* at ——, 848 F.Supp. at 192.

Pursuant to the Court's order, Commerce changed its methodology for calculating the United States price tax. *Remand Results* at 3. On remand, Commerce could not identify substantial evidence in support of its determination that Nissan and Toyota related-party transfer prices were at arm's length. *Id.* at 6, 9. Commerce, therefore, adjusted the transfer prices paid for certain components to ensure they represented fair market value for the respective components. *Id.* at 8, 10. Commerce also corrected errors in Toyo's computer database as directed by the Court's remand order. *Id.* at 10–11. As a result of the changes made on remand, Commerce recalculated the respondents' respective dumping margins and assigned the following margins for the period November 24, 1987 through May 31, 1989: Nissan 7.39%, Toyota 13.75%, and Toyo 6.74%. *Id.* at 11.

## CONTENTIONS OF THE PARTIES

While plaintiffs agree with Commerce's substantive discussion in the *Remand Results,* they argue this matter should be remanded to the agency in order to correct several clerical errors in the agency's computer program which have significantly reduced the dumping margins. According to plaintiffs, some errors resulted from Commerce's remand calculations and others occurred in the underlying proceeding and again on remand. Additionally, plaintiffs contend a remand is necessary for Commerce to adjust Nissan's related suppliers' transfer prices to reflect arm's length transactions.

Commerce asks the Court to sustain its *Remand Results.* Commerce argues plaintiffs' allegations of clerical errors should be dismissed as untimely. According to Commerce, the alleged errors all originally arose in the final results and a request for correction should have been made at that time. With respect to Nissan's related supplier transfer prices, Commerce claims it selected a methodology which reasonably establishes the fair market value of Nissan's forklift components and protects against distortions in Nissan's cost of manufacturing.

---

**2.** Defendant–Intervenors Nissan Motor Co., Ltd., Nissan Industrial Equipment Corp. and Barrett Industrial Trucks, Inc. will be referred to collectively as "Nissan."

Toyo complains the Court should not have ordered Commerce to correct errors in its database when Commerce had already determined plaintiffs made untimely requests for the corrections. Toyo, therefore, asks the Court to remand the action to Commerce for an explanation as to why the agency's finding of untimeliness was unsupported by substantial evidence and not in accordance with law. In the alternative, Toyo requests the Court to reconsider its remand order directing Commerce to correct the errors and issue an opinion which addresses whether Commerce properly determined plaintiffs' request was untimely. Because Toyo is concerned with the protracted nature of this action, however, it consents to withdraw its request for reconsideration by the Court or remand for Commerce to explain its finding if doing so will help end these proceedings.

Nissan contends plaintiffs should not be permitted to complain about alleged clerical errors at this late date. According to Nissan, Commerce did not make the alleged errors relating to it and Toyo on remand, but instead the alleged errors were part of Commerce's computer program used in the *Final Results*. Nissan argues, therefore, 19 C.F.R. § 353.28 (1992) required plaintiffs to request any corrections "five business days after the date of disclosure," and not more than two years after Commerce issued the *Final Results* as plaintiffs sought to do in this case. Furthermore, Nissan supports the methodology that Commerce used to adjust Nissan's related-supplier transfer prices. Nissan claims Commerce's methodology is supported by substantial evidence and is otherwise in accordance with law.

## STANDARD OF REVIEW

■ The appropriate standard for the Court's review of Commerce's *Remand Results* is whether the agency's determination is supported by substantial evidence on the record and is otherwise in accordance with law. 19 U.S.C. § 1516a(b)(1)(B) (1988). "Substantial evidence is something more than a 'mere scintilla,' and must be enough reasonably to support a conclusion." *Ceramica Regiomontana S.A. v. United States,*

10 CIT 399, 405, 636 F.Supp. 961, 966 (1986), *aff'd,* 5 Fed.Cir.(T) 77, 810 F.2d 1137 (1987) (citations omitted).

■ "When applying the substantial evidence standard, the court may not substitute its judgment for that of the agency when the choice is between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo.*" *Budd Co. v. United States,* 14 CIT 595, 600, 746 F.Supp. 1093, 1097 (1990) (quotations and citations omitted). Furthermore, as long as the methodology and procedures used by Commerce are "reasonable means of effectuating the statutory purpose, and there is substantial evidence in the record supporting the agency's conclusions, the court will not impose its own views as to the sufficiency of the agency's investigation or question the agency's methodology." *National Knitwear & Sportswear Assoc. v. United States,* 15 CIT 548, 553, 779 F.Supp. 1364, 1369 (1991) (quotation and citation omitted).

## DISCUSSION

### A. *Nissan's Related–Party Transfer Prices*

■ On remand Commerce determined it could not rely on Nissan's transfer prices. *Remand Results* at 7. Commerce, therefore, calculated the percentage by which Nissan's total standard cost of manufacturing should be increased to reflect adequately arm's length prices. *Id.* at 8. Plaintiffs argue Commerce should have instead adjusted the transfer prices themselves to reflect arm's length transactions. Plaintiffs maintain Commerce was required to explain why it believed the [ ]* represented arm's length prices. According to plaintiffs, Commerce itself recognized this data did not represent arm's length prices because the agency did not rely on the data to calculate Nissan's costs for those transfer prices which were [ ].

The Court finds plaintiffs argument meritless. Commerce is not required to treat data which is based on substantial evidence on the record ( [ .]) in the same fashion as data

* Editor's Note: [ ] indicate that confidential material was deleted for purposes of publication.

which the agency determines is not supported by substantial evidence. Because Commerce concluded it could not rely on transfer prices which were [ ], it adjusted the prices in order to comply with the statute and the Court's remand order. It is not for this Court to direct Commerce to choose one methodology over another where both methodologies are reasonable. While plaintiffs articulate another possible methodology, they fail to demonstrate to the Court how the methodology used by Commerce is unreasonable, not based on substantial evidence or not in accordance with law. The Court need not address the merits of plaintiffs' suggested methodology because the Court holds Commerce's methodology is supported by substantial evidence on the record and is otherwise in accordance with law. *See PPG Indus., Inc. v. United States,* 14 CIT 522, 532, 746 F.Supp. 119, 129 (1990) ("[T]he chosen methodology need not be the most reasonable though it must reasonably and accurately reflect factual information in the administrative record.") (quotations and citations omitted).

B. *Errors in Toyo's Database*

■ Plaintiffs do not challenge Commerce's correction of errors in Toyo's database, but rather present new bases of error. The Court, however, refuses to permit another remand in this already lengthy proceeding. Based on Commerce's regulations, plaintiffs' request is untimely. The applicable regulation provides in relevant part:

**353.28 Procedures for the correction of ministerial errors.**

. . . .

(b) *Time limits.* Comments must be filed within five business days after the date of disclosure unless the Secretary extends the time limit based upon a written request for extension that is filed within five business days after the date of disclosure and showing cause for such extension. . . .

19 C.F.R. § 353.28. Whether Commerce made the errors on remand or during the underlying investigation, plaintiffs have not satisfied the time requirements of this regu-

lation nor have they provided this Court with a reason why their request for correction was not timely made. This Court has noted "Congress intended final determinations to be precisely that. Indeed, if determinations were constantly subject to amendment, it would be difficult to answer the question as to when a *final* determination would ever be made." *Koyo Seiko Co. v. United States,* 14 CIT 680, 682, 746 F.Supp. 1108, 1110 (1990) (quotations and citation omitted) (emphasis in original). Accordingly, the Court denies plaintiffs' request for a remand to correct alleged errors.

CONCLUSION

After considering all of plaintiffs', defendant's and defendant-intervenors' arguments, the Court holds Commerce (1) complied with the Court's remand order by adjusting Nissan's related-party transfer prices to reflect fair market value and (2) properly rejected plaintiffs' request to correct alleged errors in Toyo's database. The Court sustains Commerce's *Final Results of Redetermination Pursuant to Court Remand* (April 11, 1994) in all respects and denies plaintiffs' and Toyo's requests for another remand. This case is dismissed.