Slip Op. 08-16

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **CHINA PROCESSED FOOD IMPORT & EXPORT COMPANY**, <br><br> Plaintiff, <br><br> v. <br><br> **UNITED STATES**, <br><br> Defendant, <br><br> and <br><br> **COALITION FOR FAIR PRESERVED MUSHROOM TRADE**, <br><br> Defendant-Intervenor. | **Before: Timothy C. Stanceu, Judge** <br><br> **Court No. 04-00503** |

## OPINION

[Denying plaintiff's motion for judgment upon the agency record and dismissing action]

Dated: January 31, 2008

*Trade Pacific PLLC* (*Robert G. Gosselink*) for plaintiff China Processed Food Import & Export Company.

*Jeffrey S. Bucholtz*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, *Patricia M. McCarthy*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Richard P. Schroeder*); *Quentin M. Baird*, *Philip J. Curtin*, and *Jonathan M. Zielinski*, Office of Chief Counsel for Import Administration, United States Department of Commerce, of counsel, for defendant.

*Kelley Drye Collier Shannon* (*Michael J. Coursey* and *Adam H. Gordon*) for defendant-intervenor Coalition for Fair Preserved Mushroom Trade.

Stanceu, Judge: China Processed Food Import & Export Company ("plaintiff" or

"COFCO") challenges the final administrative determination ("Final Results") that the

International Trade Administration, United States Department of Commerce ("Commerce" or the

"Department") issued in the fourth administrative review of an antidumping duty order entered

on certain preserved mushrooms ("subject merchandise") from the People's Republic of China

("China" or the "PRC"). *See Certain Preserved Mushrooms From the People's Republic of*

*China: Final Results of Sixth Antidumping Duty New Shipper Review and Final Results and*

*Partial Rescission of the Fourth Antidumping Duty Admin. Review*, 69 Fed. Reg. 54,635 (Sept. 9,

2004) ("*Final Results*"). Plaintiff moves pursuant to USCIT Rule 56.2 for judgment upon the

agency record, arguing that the Final Results were unlawful because Commerce abused its

discretion and acted unfairly in applying to COFCO retroactively a change in the methodology

for determining the normal value of COFCO's subject merchandise. Plaintiff, however, does not

challenge the new methodology on the merits.

Under the new methodology, which Commerce applied in the fourth administrative

review but not in the antidumping duty investigation or in a previous administrative review of the

antidumping duty order, Commerce treated COFCO and its affiliated producers and exporters as

a single entity. When determining the normal value of COFCO's exports of subject

merchandise, Commerce used not only data on the factors of production associated with the

actual producer of the merchandise that COFCO exported to the United States, but also factors-

of-production data of an affiliated producer that did not produce that merchandise. Coalition for

Fair Preserved Mushroom Trade, the petitioner in the antidumping duty investigation resulting in

the antidumping duty order ("petitioner") and the party that advocated use of the new

methodology in the fourth administrative review, sought and was granted defendant-intervenor

status but did not further participate in this litigation. *See id.* at 54,635 n.3. Because plaintiff, in

moving for judgment upon the agency record, did not challenge on the merits the method by

which Commerce calculated the normal value of COFCO's merchandise in the fourth administrative review, and because Commerce did not exceed its discretion in deciding not to continue following the method by which it determined such normal value prior to the fourth administrative review, the court denies plaintiff's motion for judgment upon the agency record and, pursuant to USCIT Rule 56.2(b), dismisses this action.

## I. BACKGROUND

### A. The Investigation and the First, Second, and Third Administrative Reviews

Commerce issued an antidumping duty order on the subject merchandise in 1999. *Notice of Amendment of Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Certain Preserved Mushrooms From the People's Republic of China*, 64 Fed. Reg. 8308 (Feb. 19, 1999) ("*Order*"). COFCO, an exporter of the subject merchandise in China, purchased the subject merchandise that it exported to the United States during the period of investigation from two mushroom producers with which it was affiliated, Zishan Cannery Canned Food Factory (now known as Fujian Zishan Group Co., Ltd. ("Fujian Zishan")) and COFCO (Longhai) Food, Inc. ("Longhai"). Mem. of P. & A. in Supp. of COFCO's Mot. for J. upon the Agency R. 2 ("COFCO's Mem. of P. & A."). Commerce determined in the investigation that the subject merchandise COFCO exported to the United States was sold at less than fair value and applied to that merchandise an antidumping duty margin of 121.47 percent. *Order*, 64 Fed. Reg. at 8310. In the final less-than-fair-value determination that concluded the antidumping duty investigation, Commerce identified various affiliates of COFCO but did not, in discussing its calculation of the normal value of COFCO's merchandise or its determination of an antidumping duty margin for COFCO, discuss whether COFCO and any of its affiliates should be treated as a single entity.

*See Notice of Final Determination of Sales at Less Than Fair Value: Certain Preserved Mushrooms from the People's Republic of China*, 63 Fed. Reg. 72,255, 72,255-56, 72,258 (Dec. 31, 1998)[1]; *Notice of Prelim. Determination of Sales at Less Than Fair Value and Postponement of Final Determination: Certain Preserved Mushrooms From the People's Republic of China*, 63 Fed. Reg. 41,794, 41,796, 41,799-800 (Aug. 5, 1998).

After issuance of the antidumping duty order, COFCO stopped purchasing subject merchandise from Fujian Zishan and Longhai, producers that processed, but did not grow, mushrooms, and began to purchase solely from another mushroom producer with which it was affiliated, Fujian Yu Xing Fruit & Vegetable Foodstuff Development Co. ("Yu Xing"), a producer that did grow mushrooms. COFCO's Mem. of P. & A. 3; *Certain Preserved Mushrooms From the People's Republic of China: Prelim. Results of Sixth New Shipper Review and Prelim. Results and Partial Rescission of Fourth Antidumping Duty Admin. Review*, 69 Fed. Reg. 10,410, 10,413 (Mar. 5, 2004) ("*Prelim. Results*"). "COFCO believed that the primary reason for its 127.47 [*sic*] percent antidumping margin was that Fujian Zishan's and [Longhai's] production processes did not take advantage of vertical integration, and that the production costs and normal values calculated by Commerce were higher than they otherwise might have been had Fujian Zishan and [Longhai] grown mushrooms instead of purchasing them." COFCO's Mem. of P. & A. 3.

---

[1] Commerce identified China National Cereals, Oils, & Foodstuffs Import & Export Corp. as COFCO's owner. It also identified Xiamen Jiahua Import & Export Trading Co., Ltd. ("Xiamen Jiahua") as COFCO's affiliated exporter and Xiamen Special Economic Trade Group Cereals, Oils, & Foodstuffs Import & Export Company as Xiamen Jiahua's owner. *Notice of Final Determination of Sales at Less Than Fair Value: Certain Preserved Mushrooms from the People's Republic of China*, 63 Fed. Reg. 72,255, 72,255-56 (Dec. 31, 1998).

In the first administrative review, Commerce calculated the normal value of COFCO's merchandise based on the factors-of-production data reported by COFCO's sole producer, Yu Xing, for the period August 5, 1998 through January 31, 2000. *See Prelim. Results of First New Shipper Review and First Antidumping Duty Admin. Review: Certain Preserved Mushrooms From the People's Republic of China*, 65 Fed. Reg. 66,703, 66,706-07 (Nov. 7, 2000) (identifying Yu Xing as COFCO's supplier). Commerce considered and rejected petitioner's objection that Yu Xing's factors-of-production data were unreliable. *See Issues and Decision Mem. for the Antidumping Duty Admin. and New Shipper Reviews on Certain Preserved Mushrooms from the People's Republic of China – Aug. 5, 1998, through Jan. 31, 2000* at 1-2, 18-19 (May 31, 2001). Commerce determined an antidumping duty margin of 0.00 percent for entries of subject merchandise exported by COFCO during the period of August 5, 1998 through January 31, 2000. *See Final Results of First New Shipper Review and First Antidumping Duty Admin. Review: Certain Preserved Mushrooms From the People's Republic of China*, 66 Fed. Reg. 31,204, 31,205 (June 11, 2001). From the published decision concluding the first administrative review, it does not appear that either petitioner or Commerce considered the possibility of the Department's collecting and using data from COFCO's other affiliates in determining the normal value of COFCO's merchandise. *See id.* at 31,204-06.

Commerce conducted two additional administrative reviews of the antidumping duty order before the administrative review at issue in this case. However, upon petitioner's request, the second and third administrative reviews were rescinded with respect to COFCO. *Certain Preserved Mushrooms From the People's Republic of China: Prelim. Results of New Shipper Review and Prelim. Results and Partial Rescission of Second Antidumping Duty Admin. Review*,

67 Fed. Reg. 10,128, 10,129 (Mar. 6, 2002) (covering the period February 1, 2000 through

January 31, 2001); *Certain Preserved Mushrooms from the People's Republic of China: Notice*

*of Partial Rescission of Antidumping Duty Admin. Review*, 67 Fed. Reg. 53,914, 53,914

(Aug. 20, 2002) (covering the period February 1, 2001 through January 31, 2002).  Accordingly,

the assessment rate for entries of COFCO's merchandise made during those time periods

remained at 0.00 percent, the rate determined in the first administrative review.

### B.  The Fourth Administrative Review

Commerce conducted the administrative review at issue here, *i.e.*, the fourth

administrative review, for entries of subject merchandise made by COFCO, among others, during

the period February 1, 2002 through January 31, 2003 ("period of review" or "POR").  *Prelim.*

*Results*, 69 Fed. Reg. at 10,412.  During the fourth administrative review, in response to the

Department's requests for information, COFCO reported that Yu Xing, its affiliated producer,

supplied all subject merchandise that COFCO exported to the United States during the period of

review, and COFCO provided Yu Xing's factors-of-production data.  *See*, *e.g.*, *Letter from White*

*& Case to Sec'y of Commerce* A16-A17, D1-D15, Exs. D1-D6 (May 30, 2003) (responding to

the Department's questionnaire) (Admin. R. Doc. No. 41).  Petitioner commented that

Commerce should require COFCO to submit a full response to Section A of the Department's

questionnaire for each of its affiliates, including companies other than Yu Xing, to determine

which companies affiliated with COFCO should submit factors-of-production data.  *Letter from*

*Collier Shannon Scott to Sec'y of Commerce* 7-10 (July 17, 2003) (commenting on COFCO's

questionnaire response) (Admin. R. Doc. No. 56).  Commerce sent COFCO supplemental

questionnaires.

In response to three supplemental questionnaires, COFCO provided Commerce with information on companies that Commerce potentially could find to be affiliated with COFCO and also provided factors-of-production data for certain of those companies. *Letter from White & Case to Sec'y of Commerce* (Sept. 10, 2003) (responding to the first supplemental questionnaire) (Admin. R. Doc. No. 96); *Letter from White & Case to Sec'y of Commerce* (Nov. 10, 2003) (responding to the second supplemental questionnaire) (Admin. R. Doc. No. 127) ("*Second Supplemental Resp.*"); *Letter from White & Case to Sec'y of Commerce* (Dec. 8, 2003) (responding to the third supplemental questionnaire) (Admin. R. Doc. No. 132). Petitioner urged Commerce to treat as a single entity COFCO's affiliated producers and exporters and to calculate normal value based on a weighted average of the factors-of-production data pertaining to producers of subject merchandise with which COFCO was affiliated. *Letter from Collier Shannon Scott to Sec'y of Commerce* (Sept. 30, 2003) (commenting on COFCO's first supplemental response) (Admin. R. Doc. No. 109); *see also Letter from Collier Shannon Scott to Sec'y of Commerce* (Feb. 2, 2004) (commenting on COFCO's fourth supplemental response) (Admin. R. Doc. No. 157).

Commerce met with counsel for petitioner and COFCO during December 2003 and January 2004 to determine whether to require additional producers affiliated with COFCO to report factors-of-production data. *See Mem. to the File* (Dec. 22, 2003) (Admin. R. Doc. No. 137); *Mem. to the File* (Dec. 22, 2003) (Admin. R. Doc. No. 138); *Mem. to the File* (Jan. 7, 2004) (Admin. R. Doc. No. 145). Commerce subsequently issued a fourth supplemental questionnaire to COFCO in which Commerce "addressed [COFCO's] affiliations with other companies that sold and/or produced preserved mushrooms during the POR and requested

COFCO to provide factors of production data for those companies." *Prelim. Results*, 69 Fed. Reg. at 10,411; *see Letter from Sec'y of Commerce to White & Case* 1-12 (Jan. 7, 2004) (Admin. R. Doc. No. 146) ("*Fourth Supplemental Questionnaire*"). Specifically, Commerce asked that COFCO provide factors-of-production data for two additional producers, Fujian Zishan and COFCO (Zhangzhou) Food Industrial Co., Ltd. ("Zhangzhou"). *Fourth Supplemental Questionnaire* at 1, 11-12. COFCO responded in January and February 2004, providing requested information for both Fujian Zishan and Zhangzhou. *Prelim. Results*, 69 Fed. Reg. at 10,411; *Letter from White & Case to Sec'y of Commerce* (Jan. 26, 2004) (Admin. R. Doc. No. 156) ("*Fourth Supplemental Resp. Part I*"); *Letter from White & Case to Sec'y of Commerce* (Feb. 9, 2004) (Admin. R. Doc. No. 167) ("*Fourth Supplemental Resp. Part II*").

Commerce issued a preliminary determination in the fourth administrative review ("Preliminary Results") in which Commerce concluded that COFCO was affiliated with three producers – Yu Xing, Fujian Zishan, and Zhangzhou – and two other exporters – China National Cereals, Oils, & Foodstuffs Import & Export Corp. ("China National") and Xiamen Jiahua Import & Export Trading Co., Ltd. ("Xiamen Jiahua") – through common ownership and common control. *Prelim. Results*, 69 Fed. Reg. at 10,413. Commerce cited COFCO's "significant ownership share in Yu Xing" and identified China National as COFCO's parent company and the entity through which COFCO is affiliated with producers Fujian Zishan and Zhangzhou and exporter Xiamen Jiahua. *Id.* Commerce further concluded that the three affiliated producers should be treated as a single entity. *Id.* at 10,413-14. Because Zhangzhou did not produce processed mushrooms in the same container sizes as those sold by COFCO in the United States, Commerce did not use Zhangzhou's factors-of-production data in determining the

normal value of COFCO's merchandise. However, for identical sizes of canned mushrooms

produced by Yu Xing and Fujian Zishan, Commerce weight-averaged the factors of production

reported by Fujian Zishan with those of Yu Xing. *See 4th Admin. Review of the Antidumping*

*Duty Order on Certain Preserved Mushrooms from the People's Republic of China: Calculation*

*Mem. for the Prelim. Results for China Processed Food Import & Export Co. ("COFCO")* at 2-3

(Mar. 1, 2004) (Admin. R. Doc. No. 192) ("*COFCO Calculation Mem.*"); *see also Prelim.*

*Results*, 69 Fed. Reg. at 10,420. Commerce used this approach even though all of the

merchandise exported by COFCO during the period of review was produced by Yu Xing, not

Fujian Zishan. Commerce preliminarily determined a margin of 87.47 percent for COFCO.

*Prelim. Results*, 69 Fed. Reg. at 10,422.

Upon issuing the Preliminary Results, Commerce sent COFCO another supplemental

questionnaire. *See Letter from Sec'y of Commerce to White & Case* (Mar. 5, 2004) (setting forth

the fifth supplemental questionnaire) (Admin. R. Doc. No. 193). COFCO responded, providing

additional data concerning its affiliates. *Letter from White & Case to Sec'y of Commerce*

(Mar. 31, 2004) (responding to the fifth supplemental questionnaire) (Admin. R. Doc. No. 209).

In the Final Results, Commerce affirmed its determination to treat COFCO and the three

producers – Yu Xing, Fujian Zishan, and Zhangzhou – as a single entity and also added two

exporters to that entity – China National and Xiamen Jiahua. *Final Results*, 69 Fed. Reg.

at 54,639. Commerce determined a margin of 3.92 percent for COFCO. *Id.* at 54,641. As it had

in the Preliminary Results, Commerce used factors-of-production data of both Yu Xing and

Fujian Zishan in determining the normal value of COFCO's merchandise. However, Commerce

changed its method for calculating COFCO's normal value from that used in the Preliminary

Results.  Agreeing with a comment of COFCO, Commerce first calculated the normal value for each product based on the factors of production at each separate facility and then averaged the normal values by applying a weighting factor based on the total production quantity of each product.  *Issues and Decision Mem. for the Final Results of the Antidumping Duty New Shipper and Admin. Reviews on Certain Preserved Mushrooms from the People's Republic of China – Feb. 1, 2002, through Jan. 31, 2003*, Comment 2 ("*Decision Mem.*").

On October 8, 2004, COFCO filed a summons and complaint contesting the Final Results.  *See* Compl. ¶¶ 12-15.  Plaintiff moves pursuant to USCIT Rule 56.2 for judgment upon the agency record.  *See* Pl.'s Rule 56.2 Mot. for J. upon the Agency R. 1-2; COFCO's Mem. of P. & A. 1.

## II.  DISCUSSION

The court has jurisdiction over COFCO's cause of action pursuant to 28 U.S.C. § 1581(c).  28 U.S.C. § 1581(c) (2000); *see also* Compl. 1.  COFCO timely brought suit pursuant to 19 U.S.C § 1516a(a)(2)(A)(i) to contest the Final Results.  19 U.S.C § 1516a(a)(2)(A) (2000). COFCO has standing to do so because it is an exporter of the subject merchandise that participated in the administrative review proceeding before Commerce.  *Id.*; *see* Compl. 1-2.  The court reviews the Final Results according to 19 U.S.C. § 1516a(b)(1)(B)(i), which requires the court to "hold unlawful any determination, finding, or conclusion found . . . in an action brought under [19 U.S.C. § 1516a(a)(2)], to be unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B).

Plaintiff's challenge to the Final Results arose from the Department's application in the fourth administrative review, but not in the investigation or in a prior administrative review, of a

procedure to which Commerce has referred as "collapsing." Although plaintiff's complaint set forth two claims related to the application of the "collapsing" methodology, plaintiff, in its motion for judgment upon the agency record, limited its arguments to the second claim. *See* Compl. ¶¶ 12-15; COFCO's Mem. of P. & A. 1 & n.1. Below, the court first describes the Department's "collapsing" regulation, 19 C.F.R. § 351.401(f), to provide the necessary background for the discussion of plaintiff's claims. *See* 19 C.F.R. § 351.401(f) (2004). The court then addresses the consequences of plaintiff's abandonment of its first claim, which claim had challenged certain factual findings and determinations supporting the application of the Department's "collapsing" methodology. Finally, the court addresses plaintiff's second claim, which claim is the basis for plaintiff's motion for judgment upon the agency record.

Under the procedure set forth in the Department's regulations, Commerce in some circumstances will "collapse" a producer of subject merchandise and producers affiliated with that producer, *i.e.*, treat the producer and its affiliated producers as a single entity, in an antidumping duty investigation or review. *See id.* § 351.401(f)(1). Specifically, under 19 C.F.R. § 351.401(f)(1), "the Secretary will treat two or more affiliated producers as a single entity where those producers have production facilities for similar or identical products that would not require substantial retooling of either facility in order to restructure manufacturing priorities and the Secretary concludes that there is a significant potential for the manipulation of price or production." *Id.* The Department's regulation on collapsing further provides that:

> [i]n identifying a significant potential for the manipulation of price or production, the factors the Secretary may consider include:
> (i) The level of common ownership;
> (ii) The extent to which managerial employees or board members of one firm sit on the board of directors of an affiliated firm; and

(iii) Whether operations are intertwined, such as through the sharing of sales information, involvement in production and pricing decisions, the sharing of facilities or employees, or significant transactions between the affiliated producers.

*Id.* § 351.401(f)(2). In the fourth administrative review, Commerce "collapsed" COFCO with Chinese producers, and also with Chinese exporters, of the subject merchandise. *Final Results*, 69 Fed. Reg. at 54,639. Commerce determined COFCO to be affiliated with these other producers and exporters, a determination that COFCO did not contest in the administrative review and does not challenge before the court. *See id.* In making the determination that COFCO and the various producers and other exporters were affiliated for purposes of the antidumping laws, Commerce applied criteria set forth in 19 U.S.C. § 1677(33) (2000).[2] *See id.*; *Prelim. Results*, 69 Fed. Reg. at 10,413-14.

The regulation on collapsing does not expressly limit the use of the collapsing methodology to antidumping cases involving merchandise from market economy countries. In fact, Commerce has applied the collapsing regulation to merchandise from nonmarket economy

---

[2] In relevant part, 19 U.S.C. § 1677(33) defines "affiliated persons," stating that

[t]he following persons shall be considered to be "affiliated" or "affiliated persons":
…
(E) Any person directly or indirectly owning, controlling, or holding with power to vote, 5 percent or more of the outstanding voting stock or shares of any organization and such organization.
(F) Two or more persons directly or indirectly controlling, controlled by, or under common control with, any person.
(G) Any person who controls any other person and such other person.

19 U.S.C. § 1677(33)(E)-(G) (2000). The section further provides that "[f]or purposes of this paragraph, a person shall be considered to control another person if the person is legally or operationally in a position to exercise restraint or direction over the other person." *Id.* § 1677(33).

countries even though the method for determining normal value in a nonmarket economy country

is substantially different from the method applied to merchandise from a market economy

country. *See*, *e.g.*, *Hontex Enters., Inc. v. United States*, 27 CIT 272, 288-97, 248 F. Supp. 2d

1323, 1337-44 (2003) (comparing the application of the collapsing methodology in market and

nonmarket economy cases). If the subject merchandise is produced in and exported from a

country that Commerce considers to be a nonmarket economy country, such as China, Commerce

usually calculates the normal value of the subject merchandise according to a factors-of-

production method specified by statute. *See* 19 U.S.C. § 1677b(c)(1) (2000). Under this method,

the Department identifies and quantifies the factors of production[3] utilized in producing the

subject merchandise. *Id.* § 1677b(c)(1), (3)-(4). The Department then determines values for

these factors based on the best available information pertaining to a market economy country that

is at a level of economic development comparable to that of the nonmarket economy country and

that is a significant producer of either the subject merchandise or comparable merchandise.[4] *See*

*id.* § 1677b(c)(4). Specifically, the statute provides that where the subject merchandise is

exported from a nonmarket economy country and Commerce finds (as it did in this case) that

available information does not permit normal value to be determined according to the usual

method as provided in 19 U.S.C. § 1677b(a), "the administering authority shall determine the

---

[3] As specified by the statute, the non-exhaustive list of factors of production subject to valuation includes the hours of labor required to produce the merchandise, the quantities of raw materials used, the amount of energy and other utilities consumed in the production process, and any representative capital cost, including depreciation. 19 U.S.C. § 1677b(c)(3) (2000).

[4] In the fourth administrative review, Commerce chose India as the "surrogate" market economy country for purposes of valuing the factors of production. *Prelim. Results*, 69 Fed. Reg. at 10,420.

normal value of the subject merchandise on the basis of the value of the factors of production utilized in producing the merchandise and to which shall be added an amount for general expenses and profit plus the cost of containers, coverings, and other expenses." *Id.* § 1677b(c)(1). Unless Commerce finds that available information is inadequate for doing so (a finding Commerce did not make in this case), Commerce is to value the factors of production based on the best available information regarding the values of such factors in the surrogate country or countries that Commerce chooses (*i.e.*, in this case, India). *See id.* § 1677b(c)(1)-(2); *Prelim. Results*, 69 Fed. Reg. at 10,420.

In the fourth administrative review, Commerce invoked its collapsing authority under 19 C.F.R. § 351.401(f) in determining the normal value of COFCO's exports of subject merchandise according to factor-of-production data pertaining to two Chinese mushroom producers, Yu Xing and Fujian Zishan. *See Prelim. Results*, 69 Fed. Reg. at 10,413-14, 10,420; *COFCO Calculation Mem.* 2-3. Commerce did so even though COFCO reported (and Commerce found) that all subject merchandise that COFCO exported to the United States market during the period of review was produced by Yu Xing. *See Prelim. Results*, 69 Fed. Reg. at 10,413; *Decision Mem*. at 11-12. More broadly, Commerce applied its collapsing method in the Final Results in deciding to treat COFCO and its two affiliated exporters, China National and Xiamen Jiahua, and producers Yu Xing, Fujian Zishan, and Zhangzhou, as a single entity, subjecting COFCO and the companies affiliated with COFCO to COFCO's antidumping duty rate. *Final Results*, 69 Fed. Reg. at 54,639, 54,641.

Upon applying the criteria of 19 C.F.R. § 351.401(f), Commerce concluded that "the first and second collapsing criteria are met here because [Yu Xing, Fujian Zishan, and Zhangzhou] are

affiliated . . . and all have production facilities for producing similar or identical products that would not require substantial retooling in order to restructure manufacturing priorities . . . ." *Prelim. Results*, 69 Fed. Reg. at 10,414 (citing *Fourth Supplemental Resp. Part II*). Commerce concluded that "the third collapsing criterion is met in this case because a significant potential for manipulation of price or production exists among [Yu Xing, Fujian Zishan, and Zhangzhou]" due to common ownership, common control through a common member of the board of directors and a general manager shared by two of the companies, and operations found to be "sufficiently intertwined." *Id.* at 10,413-14. On the issue of "sufficiently intertwined" operations, Commerce found that "COFCO has shifted its source of supply among these affiliates." *Id.* at 10,414. Commerce explained that it used Fujian Zishan's factors-of-production data during the investigation to determine COFCO's dumping margin and "that during the POR Fujian Zishan supplied preserved mushrooms to Xiamen Jiahua, and Yu Xing supplied preserved mushrooms to COFCO . . . ." *Id.* (citing *Fourth Supplemental Resp. Part II*, Ex. 1 and *Second Supplemental Resp.* at 4). In the Final Results, Commerce affirmed its conclusions regarding collapsing of the affiliated producers and included the two affiliated exporters in the collapsed entity. "We note that our rationale for collapsing, *i.e.*, to prevent manipulation of price and/or production, applies to both producers and exporters, if the facts indicate that producers of like merchandise are affiliated as a result of their mutual relationship with an exporter." *Final Results*, 69 Fed. Reg. at 54,639.

In its complaint, plaintiff alleges as its first claim that "[t]he Department's findings, determinations, and conclusion that Yu Xing, Fujian Zishan, and [Zhangzhou] had production facilities for producing similar or identical products that would not require substantial retooling

in order to restructure manufacturing priorities, were not supported by substantial evidence and/or otherwise not in accordance with law." Compl. ¶ 13. As stated previously, COFCO expressly declined to pursue this claim in moving for judgment upon the agency record, stating in its memorandum in support of its motion that it "has dropped one of the issues previously identified" and that "[t]he Rule 56.2(c) statement therefore supersedes the Statement of Claims filed earlier." COFCO's Mem. of P. & A. 1 n.1. Because plaintiff did not include its first claim in its motion for judgment upon the agency record, that claim is not before the court.

The Court of International Trade previously has addressed the general issue of whether Commerce may determine normal value according to 19 U.S.C. § 1677b(c)(1) on the basis of the value of factors of production that pertained to an affiliated producer that did not actually produce the subject merchandise exported to the United States but that Commerce collapsed with the actual producer. *See Anshan Iron & Steel Co. v. United States*, 27 CIT 1234, 1254 (2003) (concluding that no language in the statute supports the proposition that Commerce must exclude from the calculation of normal value the factors of production of non-exporting subsidiaries that manufactured the subject merchandise during the period of investigation). The Department's method of determining the normal value of COFCO's merchandise in the fourth administrative review appears to be similar to the method that was at issue in *Anshan Iron & Steel Co. See id.* at 1254-55. However, the court will not address the issue of whether the Department's method of determining normal value on the record of this case was consistent with 19 U.S.C. § 1677b(c) and related provisions because COFCO has not raised this issue in moving for judgment upon the agency record. COFCO's memorandum in support of its motion makes plain

that COFCO is not challenging on the merits the method by which Commerce calculated the normal value of its merchandise. *See* COFCO's Mem. of P. & A. 1 & n.1.

Under USCIT Rule 56.2(c), a party moving for judgment upon the agency record must state in its brief the issues of law presented together with the reasons for contesting or supporting the administrative determination. USCIT R. 56.2(c). Nowhere in plaintiff's memorandum in support of its motion for judgment upon the agency record does the court find any argument by plaintiff that the Department's method of determining normal value in the fourth administrative review was impermissible according to 19 U.S.C. § 1677b(c) and related provisions of the antidumping laws. In abandoning the first claim set forth in its complaint, COFCO signifies that it is no longer challenging the Department's finding, pursuant to 19 C.F.R. § 351.401(f), that Yu Xing and Fujian Zishan had production facilities for producing similar or identical products that would not require substantial retooling in order to restructure manufacturing priorities, a finding that was a basis for the Department's decision to determine normal value based on factors-of-production data of both Yu Xing and Fujian Zishan.

COFCO confined its Rule 56.2 motion to the second claim in its complaint, which is that "[t]he Department's decision to implement a new normal value calculation methodology that created dumping margins for merchandise that already had entered the United States when Plaintiff China Processed had relied on the Department's previous methodology in order to avoid just such an outcome is unreasonable, inequitable, an abuse of discretion, and not in accordance with law." Compl. ¶ 15. COFCO pursues this claim in seeking relief under Rule 56.2, arguing that Commerce, in applying retroactively a new methodology for calculating normal value, unfairly penalized COFCO, which had detrimentally relied on the old methodology to avoid

selling subject merchandise in the United States at less than fair value. COFCO's Mem. of P. & A. 10. Relying on *Shikoku Chemicals Corp. v. United States*, 16 CIT 382, 795 F. Supp. 417 (1992), and *IPSCO, Inc. v. United States*, 12 CIT 359, 687 F. Supp. 614 (1988), COFCO argues that it was unfair of Commerce to change its methodology for calculating normal value when the facts had not changed and when COFCO had relied on the old methodology, *i.e.*, a methodology that did not employ collapsing, in exporting subject merchandise to the United States. COFCO's Mem. of P. & A. 10-11, 15.

As relief, COFCO seeks a court order remanding the Final Results to Commerce "with instructions (1) to calculate the normal value of COFCO's sales of subject merchandise during the fourth administrative review period using only the factor data of Yu Xing, and (2) to implement only prospectively its new methodology." *Id.* at 15. By seeking relief under which the court would direct Commerce to implement the collapsing methodology "only prospectively," COFCO suggests that it views as lawful the method by which Commerce determined normal value, *i.e.*, by using factors-of-production data of both Yu Xing and Fujian Zishan even though only Yu Xing produced the subject merchandise that COFCO exported to the United States market during the period of review. *See id.*; *see also* Reply Br. in Further Supp. of COFCO's Mot. for J. upon the Agency R. 1 ("reiterating at the outset that COFCO is not challenging Commerce's affiliation determination in the underlying proceeding. Nor is COFCO challenging Commerce's authority to collapse COFCO and its affiliated producers in future administrative reviews for purposes of calculating the appropriate antidumping duty margin.") ("COFCO's Reply"). COFCO objects only to what it characterizes as a retroactive application of a new methodology that, if applied prospectively, would have been acceptable. COFCO's Mem.

of P. & A. 15. According to plaintiff, "in the face of years of acceptance of [the Department's] prior approach, Commerce may not implement a new methodological change retroactively." *Id*. at 14. When applied in the fourth administrative review, the collapsing procedure was, according to COFCO, unfair because COFCO, desiring to avoid selling merchandise in the United States at less than fair value, had relied on the Department's previous methodology, which did not use the collapsing procedure. *Id.* at 11-15. Rather than raise a substantive objection to the new methodology, COFCO's remaining claim takes issue only with the Department's decision to discontinue using the old, non-collapsing methodology.

COFCO's characterization of the change in the Department's method as "retroactive" does not, by itself, convince the court that Commerce abused its discretion or otherwise acted contrary to law in deciding to discontinue using its previous method. Antidumping duties are administered according to a retrospective, remedial duty assessment system. The Court of International Trade has observed previously that "[t]he absence of certainty regarding the dumping margins and final assessment of antidumping duties is a characteristic of the retrospective system of administrative reviews designed by Congress." *Abitibi-Consol. Inc. v. United States*, 30 CIT __, __, 437 F. Supp. 2d 1352, 1361 (2006). Retroactivity is inherent in this system in that the Department's determinations made during the administrative review necessarily apply to merchandise previously exported from the producing country and entered into the United States. Even if COFCO relied to its detriment on the continuation of the method applied in the investigation and the first administrative review (as it claims), that reliance is not, by itself, sufficient to entitle COFCO to relief that would reverse the Department's decision in the fourth administrative review to depart from that method, under the retrospective statutory

scheme.  Commerce invoked its collapsing procedure in the fourth administrative review after making certain findings of fact that it did not make on the record of the investigation or the record of the first administrative review and did not have occasion to make in the second and third administrative reviews, which did not include a review of COFCO's sales.  Commerce proceeded with its collapsing analysis, invoking a procedure that it had established previously by regulation, on the basis of those findings of fact and on the basis of conclusions of law, which findings and conclusions COFCO has declined to challenge in moving for judgment upon the agency record.

The court disagrees with plaintiff's argument that the court, based on guidance drawn from the holding of the Court of International Trade in *Shikoku*, should conclude that Commerce abused its discretion and acted unreasonably by deciding to depart from a methodology that it had employed previously and on which COFCO had relied.  *See* COFCO's Mem. of P. & A. 13-15; *Shikoku*, 16 CIT 382, 795 F. Supp. 417.  The court concludes that the facts and circumstances of *Shikoku* differ in material respects from those giving rise to this case.

In *Shikoku*, Commerce established a dumping margin of 9.66 percent for the plaintiffs' sales of dichloro isocyanurates ("DCA") in the first administrative review of an antidumping duty order on cyanuric acid and its chlorinated derivatives, DCA and trichloro isocyanuric acid, from Japan.  16 CIT at 383, 795 F. Supp. at 418.  For plaintiffs' sales of DCA, Commerce determined a *de minimis*[5] margin in the second administrative review and assigned margins of zero for the third and fourth administrative reviews.  *Id.*  As discussed in *Shikoku*, the

---

[5] In administrative reviews conducted under 19 U.S.C. § 1675(a), "the Secretary will treat as *de minimis* any weighted-average dumping margin or countervailable subsidy rate that is less than 0.5 percent *ad valorem*, or the equivalent specific rate."  19 C.F.R. § 351.106(c)(1) (2004).

Department's regulations, 19 C.F.R. § 353.25(b)(1) (1991), allowed Commerce to revoke the "antidumping duty order if the subject merchandise ha[d] not been sold at less than foreign market value for three years subsequent to the publication of the order." *Id.* at 384 n.4, 795 F. Supp. at 418 n.4. In the fifth and sixth administrative reviews, however, Commerce changed the methodology that it had used in the investigation and in the first four administrative reviews in calculating a deduction from home market value for certain expenses that plaintiff Shikoku incurred when repackaging DCA from a granular form suitable for export to a form suitable for home market sale. *Id.* at 383-84, 795 F. Supp. at 418. Commerce determined antidumping duty margins of 0.81 and 0.91 percent for plaintiffs' sales of DCA in the fifth and sixth administrative reviews, respectively, and refused plaintiffs' request to revoke the antidumping duty order as to DCA. *Id.* By changing its methodology, Commerce attempted to eliminate from the calculation of the repackaging deduction certain labor expenses that were directly attributable to making tablets and to tablet repackaging, recognizing that plaintiffs exported chlorinated derivative products to the United States only in granular, not tablet, form. *Id.* at 384-86, 795 F. Supp. at 418-20. The plaintiffs in *Shikoku* argued that the new methodology was rife with inconsistencies and errors and did not result in a more accurate calculation of the repackaging deduction than the previous method. *Id.* They argued, further, that they had been unfairly penalized because Commerce applied the new methodology retroactively in spite of their reliance on the old methodology. *Id.* at 386-88, 795 F. Supp. at 420-22.

The Court of International Trade in *Shikoku* explained that the government had not clearly demonstrated that the new methodology was an improvement over the old but that "it appears that expenses of making tablets were significant so it is likely that there was a marginal

increase in accuracy." *Id.* at 386, 795 F. Supp. at 420. The Court also found that plaintiffs had demonstrated their reliance on the old methodology by adjusting their pricing accordingly. *Id.* The Court reasoned that "[i]t [wa]s simply too late to mandate another three years of administrative reviews because of a last minute 'improvement' in Commerce's methodology" and that "[p]laintiffs' reliance, the unchanged fact pattern, and the lack of discovery of significant error lead the court to conclude that Commerce did not have adequate reasons for its last minute change in methodology." *Id.* at 388, 795 F. Supp. at 422. The Court concluded that "Commerce abused its discretion and acted unreasonably in changing its . . . methodology . . . in the latest reviews, thereby preventing [Shikoku] from qualifying for consideration for revocation." *Id.* at 388-89, 795 F. Supp. at 422.

COFCO, unlike the plaintiffs in *Shikoku*, declined to challenge on the merits a new methodology employed by the Department. This is significant because the reasoning in *Shikoku* depended in part on the Court's conclusions, reached based on plaintiffs' having challenged the new methodology on the merits, that the government had not clearly demonstrated that the new methodology was an improvement and that the new methodology yielded what appeared to be only a marginal increase in accuracy over the old methodology, concerning which no significant error had been discovered. In this case, the court declines to reach a conclusion on the issue of the relative merits of the old and new methodologies because plaintiff decided not to make this issue the basis of its motion for judgment upon the agency record.

Moreover, COFCO did not have a basis for reliance equivalent to that found to exist in *Shikoku*, in which the previous methodology had been used, without change, in the investigation and in each of the first four administrative reviews. In *Shikoku*, after assigning plaintiffs zero

margins in the third and fourth administrative reviews, Commerce assigned plaintiffs margins

above the *de minimis* level in the fifth and sixth administrative reviews after making the change

in methodology. In contrast, prior to the fourth administrative review at issue in this case,

Commerce calculated margins for COFCO only in the investigation and in the first

administrative review. As discussed previously, Commerce rescinded the second and third

administrative reviews as to COFCO upon the withdrawal of petitioner's requests. COFCO

could have, but did not, request review of its sales in the second and third administrative reviews.

In *Shikoku*, Commerce employed a last-minute change after an investigation and four

administrative reviews, which change likely (although not definitely) produced a marginal

increase in accuracy and had the result of precluding the opportunity for revocation of the

antidumping duty order. A similar basis for reliance does not exist in this case.

COFCO also cites *IPSCO* in support of its argument that retroactive application of the

Department's new methodology was not fair in this case, where the facts had not changed and

where COFCO had relied on the old methodology. *See* 12 CIT at 378 n.27, 687 F. Supp.

at 631 n.27. The plaintiffs in *IPSCO* claimed that the Department's use of certain new

methodologies in a countervailing duty investigation unfairly altered plaintiffs' countervailing

duty liabilities retroactively. *Id.* The new methodologies at issue postdated the grants that

resulted in the countervailing duty investigation and were set forth in an appendix ("Subsidies

Appendix") that was not the subject of notice-and-comment rule making. *Id.* at 378 & n.27, 687

F. Supp. at 630-31, 631 n.27. The *IPSCO* plaintiffs claimed prejudicial reliance on the old

methodologies, under which, they alleged, they would not have incurred countervailing duty

liability. *Id.* at 378 n.27, 687 F. Supp. at 631 n.27. They argued that retroactive application of

the new methodologies, given their reliance, was impermissible unless such application produced benefits outweighing the resulting prejudice. *Id.*

The holding in *IPSCO* does not convince the court that COFCO is entitled to relief on the record of this case. The Court of International Trade held in *IPSCO* that one aspect of the new methodologies established by the Subsidies Appendix, the use of a fifteen-year period for the allocation of benefits from grants, was a legislative rule that was not adopted following the notice-and-comment procedures that were required by the Administrative Procedure Act ("APA"), but that other aspects of the Subsidies Appendix were exempt from the APA notice-and-comment requirements because they were interpretive rules. *Id.* at 373-78, 687 F. Supp. at 626-31. The Court rejected the plaintiffs' retroactivity argument in a footnote, concluding that the plaintiffs failed to demonstrate actual prejudicial reliance on the old methodologies that were in use prior to the Department's issuance of the Subsidies Appendix. *Id.* at 378 n.27, 687 F. Supp. at 631 n.27. The Court of International Trade in *IPSCO* did not further consider the plaintiffs' retroactivity claim and thus did not, in formulating its holdings in the case, decide the question of whether the change in methodology would have been impermissible on retroactivity grounds had prejudicial reliance been demonstrated.

In support of its motion for judgment upon the agency record, plaintiff also cites *Fujian Machinery and Equipment Import & Export Corp. v. United States*, 25 CIT 1150, 1169-70, 178 F. Supp. 2d 1305, 1327 (2001), and *Slater Steels Corporation v. United States*, 28 CIT 340, 345, 316 F. Supp. 2d 1368, 1374 (2004), for the principle that an agency discarding one methodology in favor of another must state clearly the grounds for its departure from prior norms. COFCO's Mem. of P. & A. 11. However, plaintiff, in its memorandum in support of its Rule 56.2 motion,

does not set forth an argument that Commerce, in the Final Results, failed to state its reasons for applying in the fourth administrative review a collapsing analysis that it did not apply previously to COFCO and its affiliates. Only in its reply brief, when attempting to refute defendant's argument that *Shikoku* is inapposite to this case, did plaintiff argue that Commerce failed to explain "its implied conclusion that the methodological change in the underlying proceeding was either necessary or better" and that Commerce, in citing a potential for manipulation of price or production, "has cited no specific facts or record evidence that actual manipulation of price or production occurred." COFCO's Reply 3-4 (entitling the section in its reply brief containing the above-quoted statement as "The Court's Holding in *Shikoku Chem. Corp. v. United States* is Applicable to the Present Case"). The court does not construe the quoted language as an attempt, impermissible or otherwise, to raise in a reply brief a new substantive argument. In the same reply brief, plaintiff stated explicitly that it was declining to raise the substantive argument discussed previously, "reiterating at the outset that COFCO is not challenging Commerce's affiliation determination in the underlying proceeding. Nor is COFCO challenging Commerce's authority to collapse COFCO and its affiliated producers in future administrative reviews for purposes of calculating the appropriate antidumping duty margin." *Id.* at 1. Moreover, as also discussed previously, plaintiff abandoned its claim in the complaint challenging the Department's finding that Yu Xing, Fujian Zishan, and Zhangzhou had production facilities for producing similar or identical products that would not require substantial retooling in order to restructure manufacturing priorities. *See* COFCO's Mem. of P. & A. 1 & n.1.

Later, in a supplemental brief responding to a question of the court concerning the issue of notice for a change in methodology, plaintiff characterized as "hollow" the Department's

explanation that collapsing was applied in the fourth administrative review to prevent manipulation of price or production, when "the collapsing regulation and the case-specific facts relevant to a finding of affiliation among COFCO's related producers had not changed since the underlying investigation[.]"  China Processed Food Import and Export Company's Resp. to the Ct.'s May 11, 2006 Questions 7 ("COFCO's Resp. to the Ct.'s Questions").  Here again, plaintiff confined its terse argument to the issues of its reliance on the old methodology and the timing of the change rather than to the question of whether the new methodology, regardless of when implemented, was in accordance with the statute.  "Without any explicit recognition or warning that the standard for collapsing had been changed, or any attempt to distinguish or reject apparently inconsistent precedent, Commerce applied its collapsing regulation to COFCO's affiliated producers in the underlying proceeding when it had never done so before."  *Id.*

In its brief responding to the court's questions, plaintiff also cited *United States v. Midwest Oil Company*, 236 U.S. 459 (1915), for the principles that parties are justified in relying on the law in conducting their business and that repeated actions of the government can define the meaning and applicability of a particular statute or power.  COFCO's Resp. to the Ct.'s Questions 4, 10.  The Supreme Court in *Midwest Oil Company* affirmed the power of the President, acting without express statutory authority, to withdraw public land that otherwise would have been open to private acquisition, based on a long-standing practice under which numerous executive orders had effected similar withdrawals.  236 U.S. at 469-74, 483.  The analysis of the practice addressed in *Midwest Oil Company* – one that "date[d] from an early period in the history of the government," occurred over "eighty years," and involved hundreds of orders – does not support, even remotely, a conclusion that COFCO, in the particular context of

this case, may obtain relief on an expectation that Commerce would not make a change in the methodology it employed in the investigation and the first administrative review. 236 U.S. at 469 (internal quotation marks and citations omitted).

In the same brief, plaintiff argues that the Department's departure from its earlier methodology was unfair, contrary to the principle, addressed in *Melamine Chemicals, Inc. v. United States*, 732 F.2d 924, 933 (Fed. Cir. 1984), and cited in *Budd Company v. United States*, 14 CIT 595, 602, 746 F. Supp. 1093, 1099 (1990), that Commerce has a duty to enforce the antidumping laws fairly. COFCO's Resp. to the Ct.'s Questions 13-14. In the portion of the opinion in *Melamine Chemicals* to which plaintiff directs the court's attention, the Court of Appeals for the Federal Circuit held that Commerce acted within its statutory authority in promulgating and applying a regulation under which Commerce disregarded antidumping margins caused solely by volatile and temporary exchange rate fluctuations and allowed a 90-day lag period for currency conversion that afforded an exporter a reasonable time period to adjust its prices to such fluctuations. 732 F.2d at 930-34. The holding in *Melamine Chemicals*, which turned on the breadth of Commerce's discretion in implementing the antidumping duty laws rather than limitations on Commerce's authority to make changes in its methodologies, rested on factual circumstances and issues of law dissimilar to those of this case. *Melamine Chemicals* does not support a conclusion that principles of fairness required Commerce to continue to use its earlier methodology during the fourth administrative review.

Nor is *Budd Company* instructive on the resolution of the question presented by COFCO's sole claim in this case. *See* 14 CIT 595, 746 F. Supp. 1093. In *Budd Company*, the Court of International Trade considered a circumstance-of-sale adjustment that Commerce made

in an amended less-than-fair-value determination to account for extreme exchange rate fluctuations. *See id.* at 600-07, 746 F. Supp. at 1097-1103. Stating the principle that "fairness is the touchstone of Commerce's duty in enforcing the antidumping laws[,]" the Court explained that "courts will not sanction Commerce's use of circumstance of sale adjustments if to do so would bring about results which appear to be entirely absurd and unfair." *See id.* at 602, 746 F. Supp. at 1099 (internal quotation marks and citations omitted). The Court nonetheless held that the Department's use of the circumstance-of-sale adjustment in the determination was reasonable and not a violation of the APA's required procedures for notice and public comment. *See id.* at 600-07, 746 F. Supp. at 1097-1103. Although stating the general principle of fairness in the administration of the antidumping laws that plaintiff has cited, *Budd Company* does not lend support to plaintiff's specific argument in this case.

### III. CONCLUSION

For the reasons discussed above, the court rejects plaintiff's claim that Commerce acted unfairly and abused its discretion in deciding to depart from a method of determining normal value on which plaintiff asserts that it relied. The court therefore will deny plaintiff's motion for judgment upon the agency record. Under the authority of USCIT R. 56.2(b), the court will enter judgment dismissing this action. *See* USCIT R. 56.2(b) (allowing the court, in ruling on a motion for judgment upon the agency record, to enter judgment in favor of an opposing party).

/s/ Timothy C. Stanceu

Timothy C. Stanceu
Judge

Dated: January 31, 2008
      New York, New York